## A. B. SADLER v. STATE.

No. A-7433.   Opinion Filed May 24, 1930.
(288 Pac. 608.)

Ray & Thomas, for plaintiff in error.

J. Berry King, Atty Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter for convenience referred to as the defendant, was convicted in the county court of Comanche county, Okla., on a charge of having in his possession intoxicating liquor, to wit, two gallons of whisky, with intent to violate the prohibitory liquor laws by bartering, selling, giving away, and otherwise furnishing the same to others, and was sentenced to pay a fine of $250, and to be confined in the county jail for 90 days, from which judgment the defendant has appealed to this court.

The state, to maintain the allegations in the information, called Jess Ansel as a witness, who, in substance, stated that, on the 15th day of July, 1928, I went out to search the defendant's place; I had a search warrant; I did not know the name of the defendant.   The testimony of the witness shows that the original search warrant had been lost and the state offered a copy in evidence; the witness stating that the description of the land in the copy was the same as in the original, that it was signed by the

same justice of the peace, and had the same return made as on the original.

On cross-examination, witness stated he came out to defendant's place about 4 o'clock; they searched the house of the defendant. The testimony was then objected to by the defendant on the ground that there had been no showing made that the affidavit was properly made upon which the search warrant was issued. Then some conversation took place between the county attorney and the defendant's attorney, and the defendant and the state agreed that Exhibit 1 was a copy of the search warrant issued by D. M. Moncrief, Sr., authorizing the officer to search the place and premises of the defendant. The affidavit which authorized the issuing of the search warrant was introduced, and marked "Exhibit 2" for the purpose of identifying it, and defendant then renewed his objection to the introduction of any testimony for the reason that the affidavit introduced was not sufficient to authorize the searching of the defendant's home.

The objection of the defendant was overruled, and defendant duly excepted. The county attorney then, in open court and in the presence of the jury, stated to the court that he had examined the affidavit for the search warrant, and believed it to be insufficient.

The court then made the following statement:

"All evidence obtained by reason of the search of the house and yard of the defendant under the search warrant just introduced in evidence will be excluded and you are instructed not to offer any evidence obtained by reason of the search of the residence, outbuildings and yard of defendant under said warrant. The jury are instructed not to consider any evidence heretofore offered by the state regarding anything found in the house, outbuildings or yard of the defendant."

The record discloses that, after the court had advised the jury not to consider any of the testimony of the witness with reference to anything found in the house, out-buildings, or yard of the defendant, the state then proceeded to ask the witness:

"Q. Mr. Ansel, out there that afternoon, did you make any search on that quarter section of land upon which the defendant's house is situated and not on his premises, for liquor? A. Yes, sir; we walked over the place.

"Q. Did you find anything on that quarter section of land? A. Yes, sir; about forty-seven yards east from the house I found four one-half gallon fruit jars full of whisky. It was hidden in some crab grass.

"Q. You may state whether or not you found any tracks leading to or from this whisky in any direction? A. Yes, sir; from the east door of the house. Mr. Thomas: We object anything he saw on the premises of the defendant.

"The Court: Sustained.

"By Mr. Tyree: Mr. Ansel, omit anything you found on the premises of the defendant, and tell us what you found in the cotton field? A. Forty-seven yards east of the house we found two gallons of whisky. We found steps leading to the whisky.

"Q. Could you tell they came from the door of the defendant's house? A. Yes, sir; they did. I followed these tracks to the end of the cotton row, right out to where we found the whisky."

On cross-examination, witness stated that the defendant's residence and filling station was on the corner of the place, an intersection of two lines of the road; that the defendant lived in the northeast corner of the intersection.

W. E. Nix stated he was a deputy sheriff; he was with Mr. Ansel when he found the two gallons of whisky near

the residence of the defendant, on July 15, 1928; the whisky was hidden in some grass about 50 steps from the premises of the defendant; there were tracks going and coming from the whisky; the tracks were a fair man size; the ground was sandy, but wet; "I did not notice where the cotton had been freshly chopped or hoed; this filling station was on the highway running north and south, and one running east and west; the east and west road running near where the whisky was found was just a country road; the tracks leading to the whisky and back had been made since the rain; I did not see any tracks going beyond where the whisky was." Witness J. S. Hanks testified it had rained the night before the search was made.

The defendant, A. B. Sadler, testified in his own behalf that he had lived in the county for several years; on July 15, 1928, the officers came out to his place; "I was running a filling station, living there with my wife and family; I did not own or control any part of the place except the filling station; Harland Mitchell was living on the quarter section of land and was cultivating it; I did not control any part of it whatever; Mr. Mitchell was making a crop on the place, had cotton choppers; Mitchell was living something like a quarter of a mile from where I lived; the whisky claimed to have been found was not mine; I did not put it there nor did I know it was there; the fence row was grown up with grass and weeds; I handled oil and gas and cold drinks; I have a well of water there on the corner; the hands working in the field that were employed by Mr. Mitchell would buy cold drinks at my place."

The defendant has assigned nine errors alleged to have been committed by the court in the trial of his case. The first assignment of the defendant is that the court erred in overruling his motion for a new trial; the fourth,

the verdict returned against the defendant is not sustained by sufficient evidence and is contrary to law. These two assignments are all that it is deemed necessary to consider in this case.

The record discloses that the officers of the law went out to defendant's home with a search warrant and searched a quarter section of land and buildings on the same, and, when the affidavit for the search warrant was produced in court, the defendant objected to any testimony on the ground that the affidavit was insufficient to justify the court in issuing a search warrant to search his premises, and, after the court had overruled the motion of the defendant, the county attorney then confessed that the affidavit for the search warrant was insufficient, and the court instructed the jury not to consider any evidence obtained by reason of the search of the residence, outbuildings, and yard of the defendant under said search warrant, and not to consider any evidence heretofore offered by the state regarding anything found in the house, outbuildings, or yard of the defendant. Under that instruction of the court, and the confession of the county attorney that the affidavit was insufficient to predicate a search warrant to search the house and outbuildings on the premises of the defendant, the county attorney proceeded to inquire and brought out the only testimony which tends to connect the defendant with the whisky, as follows:

"The witness Ansel stated they found steps leading to the whisky.

"Q. Could you tell they came from the door of the defendant's house? A. Yes, sir; they did. I followed these tracks to the end of the cotton row, right out to where we found the whisky."

This evidence, given by the witness Ansel in response to the question of the county attorney, was secured under

and by virtue of the search warrant, and was brought out by the county attorney after the court had advised the jury not to consider any testimony secured by reason of the void search warrant in the house, premises, and yard of the defendant. Without this testimony to show the tracks they claim they saw going toward the whisky, there is not a single circumstance tending to connect the defendant with the whisky found.

It was found on premises not under the control of the defendant, and about 45 or 50 yards from the defendant's house, inside of the Mitchell field. This testimony was inadmissible, and there is no competent testimony which tends to connect the defendant with the whisky. The fact that the whisky was found in another inclosure near the defendant's home, over which inclosure the defendant had nothing to do, amounts to nothing more than a suspicion. The testimony is insufficient to sustain the conviction.

The judgment is reversed.

EDWARDS, P. J., and CHAPPELL, J., concur.